Town of Richmond v. Cowan, No. S0688-04 CnC (Norton, J., Aug. 2, 2005)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT                                    SUPERIOR COURT
Chittenden County, ss.:                              Docket No. S0688-04

TOWN OF RICHMOND

v.

COWAN

ENTRY

Town seeks restoration of landowner's drainage ditch through several theories of control. Landowner disputes Town's ability to

retroactively veto his riparian improvements.  Both parties have motioned for summary judgment on their competing legal theories.  Third-party intervenors, homeowners who live downstream from Landowner, oppose Landowner's motion for reasons that mirror Town's.

This case is about water.  Specifically, it is about how water flows over Landowner's property.  Situated on a downward sloping hill, Landowner's property sits between Snipe Ireland Road at the top and Snipe Ireland Brook at the bottom. Water collects on this particular section of Snipe Ireland Road into  a drainage culvert that runs underneath the road and empties onto Landowner's property at a point on the slope about two feet below the road.  Prior to Landowner's improvements, water from this culvert flowed downhill within a shallow drainage ditch emptying into the brook at the bottom of the hill.  In 2000, Landowner added fill to the site, regraded the hill, planted vegetation, removed trees, and built a stone retaining wall.  These improvements buried the old drainage ditch.

Nevertheless, Water, being subject to the dominion of gravity, continues to flow from the culvert down the hill and into the brook.  Only now without the ditch to channel it, the water takes the diffuse path of least resistance over Landowner's property, which the evidence shows is causing some erosion and possible silt deposits in the Brook.

## 19 V.S.A. § 1111(b) Obstruction of a Drainage Ditch

Town's legal challenges to Landowner's improvements derive from its position as a sovereign and an uphill property owner.  The first basis that Town uses to demand the restoration of the old drainage ditch is 19 V.S.A. § 1111(b).  This statute deals with right-of-ways and improvements to areas that affect highway drainage.  It reads:

### § 1111 **Permitted use of the right-of-way**

*     *     *

(b) **Driveway entrances, highway grades; drainage.** It shall be unlawful to develop, construct, regrade or resurface any driveway, entrance, or approach, or build a fence or building, or deposit material of any kind within, or to in any way affect the grade of a highway right-of-way, or obstruct a ditch, culvert or drainage course that drains a highway, or fill or grade the land adjacent to a highway so as to divert the flow of water onto the highway right-of-way, without a written permit from the agency, in the case of state highways, or the legislative body, or designee of a municipality, in the case of town highways. . . . The agency or legislative body, within their respective jurisdictions, may make such rules to carry out the provisions of this sections as will adequately protect and promote the safety of the traveling public, maintain reasonable levels of service on the existing highway system, and protect the public investment in the existing highway infrastructure, but in no case deny reasonable entrance and exit to or from property abutting the highways, except on limited access highways, using safety, maintenance of reasonable levels of service on the existing highways, and protection of the public investment in the existing highway structure as the test for reasonableness, and except as necessary to be consistent with the planning goals of 24 V.S.A. § 4302 and to be compatible with any regional plan, state agency plan or approved municipal plan. . . .

Town latches onto a clause in the first sentence to argue that it is unlawful to "obstruct a ditch, culvert or drainage course that drains a highway" regardless of how far that ditch, culvert or drainage course is from the right-of-way. In this case, the ditch that Town seeks to restore is not located in the right-of-way but receives water from the right-of-way. Changing the ditch did not alter the highway's drainage. And, in truth, it did not affect either the highway or the right-of-way. Town's use of §

1111(b) extends beyond the intended use of § 1111(b) to prevent adjoining landowners from making alterations to their land that would impact the drainage of state and town highways. Nevertheless, Town argues that the above-quoted language grants it the power to review and veto all changes that involve highway runoff.

Following the Town's reasoning, § 1111(b) would hereafter require any homeowner receiving runoff from a highway, no matter how far this property was from the highway in question—or what effect the runoff had on the highway—to submit any change fitting § 1111(b)'s description to the relevant Town or agency. This might be dubbed the "Watershed" interpretation of § 1111(b). It appears to posit that a town or agency gains dominion over any drainage feature—or in the case of § 1111(b)'s preceding clause, any driveway or entrance—merely because the water has passed or will pass over the highway. Couple this "Watershed" theory with the reality that most all developed parcels in Vermont abut a road at either a higher or lower elevation—or at least receive runoff from or send it to property that abuts a road—and § 1111(b) becomes a pervasive, potentially tyrannical, mock-zoning power. Any driveway or land improvements would, apart from the normal zoning regulation, have to seek town or agency approval as a matter of course regardless of their potential impact on the adjoining road or highway. The court is dubious that the legislature intended to vest such overarching property regulatory power within a statute that otherwise deals more directly with highway safety and maintenance.

The court's purpose in construing a statute is to give its language the effect that the legislature intended. Ludlow v. Watson, 153 Vt. 437, 441 (1990) (citing In re Southview Associates, 153 Vt. 171, 175 (1989)).

Section 1111and subsection (b) must be read as a whole to effectuate such intent. Read piecemeal and divorced from the statute's overarching purpose gives the clauses in the first sentence the overreaching effect discussed above. As a whole § 1111(b) has the straightforward purpose of protecting highways from new or inadequate drainage patterns caused by adjoining private property owners. As the last sentence of the statute requires, any decision by a town or agency must balance a property owner's right to reasonable access against three public purposes, "safety, maintenance of reasonable levels of service on the existing highways, and protection of the public investment in the existing highway structure." While the immediate function of these three purpose is to test an town or agency's decision—a function not at issue here—they also encapsulate the statute's overall intent.

While § 1111(b) does not specify or require a specific level of impact or a standard of proof, each of the three underlying purposes requires some impact on the highway or its drainage system. Without some impact on the highway's drainage, there simply is no safety concern, threat to maintenance, or anything from which to protect the public's investment in the infrastructure. Neither party disputes that Landowner's changes do not affect Snipe Ireland Road. They do not alter the drainage culvert or block it from emptying onto Landowner's property. They do not redirect water back on to the Road, delay the drainage process, or limit how much water the property will accept. Landowner's property accepts, as it did with his predecessors in title, all of the water from the drainage culvert. While there might have been some question of this prior to his regrading, five years later there is no doubt about the lack of any effect. In light of this, the court is even less inclined to interpret § 1111(b) to create a new power in Town to regulate water courses merely because they once touched a Town regulated right-of-way. The legislative intent does not support such

a reading.  Landowner's changes do not fit within the purview of § 1111(b) because they do not affect, in any way, Snipe Ireland Road's drainage.

## Prescriptive Easement

For its second basis, Town argues that it has a prescriptive easement over the old drainage ditch, and Landowner must restore Town's property interest therein.

A prescriptive easement is an offshoot of adverse possession that gives a party whose has used property in a certain manner the right to continue that use.  Community Feed Store, Inc. v. Northeastern Culvert Corp., 151 Vt. 152, 155 (1989); see also In re Town Highway No. 20, 2003 VT 76, ¶ 22.  As in adverse possession, Town must prove that it has used the land in an open, notorious, continuous, and hostile manner for 15 years. Chittenden v. Waterbury Ctr. Community Church, Inc., 168 Vt. 478, 483 (1998).  In this case, Town demonstrates through the evidence that the ditch dates back to at least 1976 and has functioned as a drainage ditch ever since that date, taking water from the culvert beneath Snipe Ireland Road down to Snipe Ireland Brook until 2000.  This shows that the old drainage ditch functioned in an open, notorious, and continuous manner for at least 23 years.

What the evidence does not show is whether or not this ditch was operated in a hostile manner to Landowner and his predecessor's interests. Neither Town nor Landowner's evidence establishes who dug the ditch, who maintained the ditch, or even who planned it.  Given the straightforward, unadorned flow, there are at least three possible suspects. The Town or one of its agents might have dug it when installing the culvert.

A predecessor to Landowner may have dug it to channel water through the property and avoid the flooding that is now occuring.  Or nature, through its redoubtable hydro-geologic process, may have been responsible.  The answer to this question is important.  If either nature or a predecessor to Landowner created the ditch, then Town's claims would be less than hostile, perhaps a mere license.  This is because the right that Town seems to assert over this ditch comes from a statute which empowers selectmen of a town to lay out, establish, construct, or cause to be constructed and maintained a drainage ditch to lead water from a highway.  19 V.S.A. § 950.  Such a decision constitutes a taking, however, which must be compensated.  Sargent v. Cornwall, 130 Vt. 323, 328–29 (1972) (citing a predecessor to § 950).  If anyone but the Town or its agent dug the ditch, the ditch cannot have been established as a taking because it was not authorized by the Town Selectmen as § 950 requires.  Furthermore, if the Town did nothing to establish or maintain this ditch by act or command, then it has not acted adversely.  That is, it has not asserted its rights in a manner hostile to Landowner's interests.  See In re .88 Acres of Property, 165 Vt. 17, 21 (1996) (beyond statutory taking provisions, municipalities many adversely possess property through acts hostile to owner's title).  Instead, it may merely be said to be taking advantage of another ditch without asserting an interest in it.  See 16 Backman, at § 1013[2][c] ("'Hostile' possession has been defined as possession that is opposed and antagonistic to all other claims, and which conveys the clear message that the possessor intends to possess the land as his own.").

To a certain extent, Town's arguments may also go to a larger right to the ditch as a drainage channel merely by its position as an upper landowner.  While this argument smacks of the same "watershed" theory as Town's earlier 19 V.S.A. § 1111(b) argument, it does raise a question of

whether Town gained some inherent right to the ditch through the 23 years that Landowner or his predecessors accepted runoff from the Town's culvert. If such a right may be said to exist separate from general riparian rights, it cannot be said to exist in a specific form. See generally <u>Scanlan v. Hopkins</u>, 128 Vt. 626 (1970) (discussing riparian rights between lower and upper property owners).

Any right that Town has acquired merely by Landowner's repeated acceptance of water from the culvert is just that. Town—short of proof under § 950 or affirmative actions toward the creation or maintenance of the ditch—has only established that it has given water to Landowner, and Landowner has accepted it onto his property. The right to an easement over a specific drainage ditch on another's property simply for letting one's water flow into it does not exist. 78 Am. Jur. 2d <u>Water</u> § 370 ("[B]efore a use can be adverse in the sense of this rule, it must be an invasion of the rights of the party against whom it is set up, of such a character as to afford the person grounds of action . . . ."). Thus, the only right that the evidence shows that the Town has is one akin to the riparian right of an upper property owner. Landowner's improvements have not altered that right.

## Riparian Rights

Landowner has also moved for summary judgment based on riparian law. This argument is primarily about what duties Landowner owes to his upper and lower neighbors. Under <u>Scanlan</u>, Vermont follows the civil-law rule, which "recognizes a natural servitude for natural drainage between adjoining lands"; so that the lower property owner must accept naturally flowing surface water from upper property owners, and the upper property owner must not change the natural drainage system so as to increase the

burden on the lower. 128 Vt. at 631–32; Am. Jur. 2d <u>Water</u> § 177. The facts of this case do not implicate the riparian rights between Town and Landowner. Landowner's improvements have not altered his acceptance of Snipe Ireland Road's runoff, and Town has no riparian right under <u>Scanlan</u> or its successors to claim any right to how water flows over Landowner's lower parcel.

Notwithstanding this conclusion, Town argues that Landowner's improvements have altered the drainage and threaten to pollute Snipe Ireland Brook with sewage, silt, or pollution from his proposed house. This argument mistakes riparian rights with water pollution control. Town does not have a claim against Landowner for future pollution under the doctrine of riparian rights as none of the "affected" water even threatens to come back onto Town's property. Arguments under 10 V.S.A. § 1263 (discharge permits) or § 1264 (stormwater) are inapposite in this case as they deal with enforcement regulations that are under the purview of either the Agency of Natural Resources or the Environmental Court. 10 V.S.A. §§ 1251a, 1274. Town does not have standing to bring such an action here.

Town's arguments also touch upon the idea that an upper land owner can bring suit to require a lower landowner to restore a "proper outlet" to carry runoff from the lower property owner's property. This is a bridge too far. Riparian rights do not allow for that much control. Town's concerns are better left to lower property owners, who do have standing under this theory, and the Agency of Natural Resources, which has the power to enforce pollution laws. Town's theory would subvert the reciprocal nature of the civil-law rule and has no support in either <u>Scanlan</u> or its progeny. See 128 Vt. at 630 (discussing the balance between benefits and burdens for upper and lower property owners). As such, Town's riparian arguments

are invalid.

## Conclusion

Without recourse to 19 V.S.A. § 1111(b), Town's remaining claim of prescriptive easement depends upon some evidence that it authorized the drainage ditch, built it, or somehow affirmatively maintained it. Without proof of this type of hostile possession, Town cannot carry its burden and must be dismissed as a party. As for Landowner, he may still be liable to intervenors, who are lower adjoining property owners and receive or will receive any pollution or the effects thereof resulting from Landowner's improvements. Intervenors also allege claims that appear to sound in nuisance, but neither party has moved for summary judgment on these claims.

Based on the foregoing, Defendant Landowner's motion for summary judgment is Granted in regards to 19 V.S.A. § 1111(b) and Denied as far as there is an issue of material fact concerning the hostile element of Plaintiff Town's prescriptive easement. Plaintiff Town's Motion for summary judgment is Denied.

Dated at Burlington, Vermont_____, 2005.

_____
Judge